36 C.C.P.A. (Patents)

### Application of WATSON.
### Patent Appeal No. 5552.

United States Court of Customs and
Patent Appeals.
June 28, 1949.

Conder C. Henry, Washington, D. C.,
and Roderick Malcolm, Camden, N. J.
(Morris A. Rabkin, New York City, of
counsel), for appellant.

W. W. Cochran, Washington, D. C.,
(Clarence W. Moore, Washington, D. C.,
of counsel), for Commissioner of Patents.

Before GARRETT, Chief Judge, and
HATFIELD, JACKSON, O'CONNELL,
and JOHNSON, Associate Judges.

O'CONNELL, Associate Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the action of the Primary Examiner in rejecting claims 9, 10, 11, 13, 14, and 15 in appellant's application for a patent for "a new and useful Improvement in Staked Fasteners." Four article claims, Nos. 16, 17, 18, and 19, and two method claims, Nos. 30 and 31, have been allowed.

The references are:

| | | |
|---|---|---|
| Anderson | 945,737 | Jan. 11, 1910; |
| Darling | 1,112,525 | Oct. 6, 1914; |
| Meaker | 1,156,798 | Oct. 12, 1915; |
| Hasselquist | 1,919,552 | July 25, 1933; |
| Johnson | 2,102,558 | Dec. 14, 1937; |
| Olson | 2,225,654 | Dec. 24, 1940. |

▇▇▇ The cited patent to Hasselquist and certain patents to Alamade and Lundberg are relied upon in appellant's brief but are not reproduced in the record. Therefore, those patents may not properly be considered by the court. See In re Buser, 29 C.C.P.A., Patents, 1196, 129 F. 2d 710. The patent to Johnson cited by the examiner and the board was not relied upon by either of them in the rejection of the appealed claims nor is it included in the record. Accordingly, that patent will not be considered by the court. See also In re Upson, 34 C.C.P.A., Patents, 1022, 161 F.2d 282.

The appealed claims are drawn to an article and are submitted in three groups, each group being specific to a different feature of the article. In the first group are claims 9 and its two dependent claims, 10 and 11; in the second, claim 13 and its dependent claim 14; and in the third, claim 15. Because of the importance attaching to certain details of the involved subject matter, it is deemed necessary to a clear understanding of the issue to reproduce and hereinafter make reference to the following drawing which was filed with appellant's application.

Appellant's Drawing

FIG.8.  FIG.9.  FIG.10.  FIG.11.

The appealed claims read as follows:

"9. As a new article of manufacture, a boss having a metal base and a plurality of triangular metal pyramids formed integral with said base for staking said boss to a metal support, *said triangular pyramids being of the type having but a single inclined face and constituted of a metal sufficiently rigid to permit their apexes to pierce the surface of said metal support without being substantially distorted, yet flexible enough to be distorted by the forces encountered by their inclined faces when said faces are pressed into the body of said metal support.*

"10. The invention as set forth in Claim 9 and wherein said base and the triangular pyramids thereon are constituted of a single piece of steel.

"11. The invention as set forth in Claim 9 and wherein said inclined faces of said triangular metal pyramids slant off in the direction of the external boundary of said base.

"13. *A fastener* for attaching a part to an apertured support, said fastener *comprising a base having an inwardly tapering circular protuberance* thereon adapted to be entered into said aperture and *of a length corresponding substantially to the thickness dimension of said support,* and means integral with said base for preventing rotation of said circular protuberance in said aperture.

"14. The invention as set forth in Claim 13 and wherein the tapered surface of said protuberance slants off from said base at an angle of substantially 15° with respect to a line drawn perpendicular to said base.

"15. The combination with a boss comprising a base and *an inwardly tapering protuberance* on said base, of a peen integral with said base adjacent to said protuberance."

The italics contained in the claims hereinbefore set forth have been here supplied by the court to emphasize the limitations of those claims upon which appellant relies as imparting inventive and patentable subject matter thereto.

Appellant's invention, which relates to a means for staking a boss, as a nut, bolt, screw, rivet, grommet or other small protuberant metal fixture, to a solid metal panel or chassis, was succinctly described in the examiner's statement as follows:

"As shown in Figs. 1 to 3, the device is a nut or 'boss' 2 provided at its four corners with attaching prongs 1 and at its center with an inverted frusto-conical protuberance 3. The device is to be made a substantially integral part of a plate 5 by having the protuberance 3 enter a perforation 4 in the plate, and then subjecting the two to pressure so that the material of the plate is caused to flow in around the reduced part of the frusto-conical protuberance. Simul-

taneously the prongs 1 are caused to imbed and clinch themselves in the plate, the final result being as indicated in Fig. 5."

Appellant stated in his specification that the prior art recognized two general types of staked fasteners, the first of which was the "blade type" fasteners wherein the stakes comprise prongs or thin blades adapted to be thrust into or through a support constituted of material such as wood, while the second was the type wherein the boss is provided with a single groove or tapered protuberance which is received in a preformed hole in a metal panel or the like and subsequently subjected to pressure in order to bend or flow the supporting metal into the groove.

The problem with the first type of fastener, according to appellant's specification, was that the fastener did not provide a permanent or shake-proof connection and the blades of the fastener could not ordinarily be used in fastening a boss to a support constituted of solid metal, while the problem with the second type was that when applied to a metal support, the fastener could not be pulled out without tearing the metal surrounding the aperture in which the protuberance was seated, and the usually circular contour of the protuberance permitted undesired rotary displacement.

Appellant further stated in his specification that the patent to Anderson is representative of the first type of the fasteners hereinbefore described by him. That patent discloses as a staked fastener an integral cylindrical body member and a back plate, the back plate being provided with two or more inwardly projecting prongs which may be of any desired form, and which may comprise metal pyramids having four inclined faces. The disclosure of the patent is hereinafter more specifically described in the decision of the board with respect to the board's rejection of claims 13 and 14.

The patent to Darling relates to "Tripod-Sockets for Camera-Beds" and was cited by the examiner to show a plurality of sharply pointed spurs or lugs located laterally of an intermediate conical body portion and preferably pointing substantially longitudinally thereof. The patent was also cited to show the combination of anchoring protuberance and rotation preventing means. The patentee discloses that a sheet metal bed made of aluminum and other soft metals may be used, "the soft aluminum" taking the spurs of relatively harder material almost as readily as wood. The board made the following statement as to the further disclosure in the patent to Darling:

"* * * For example, the boss shown in Figs. 4 and 5 of the Darling patent, which incidentally is intended to be used with a metal support 1, has a base 3 and an inwardly tapering protuberance 6 on the base and a peen integral with the base adjacent to said protuberance, this peen being the next adjacent protuberance 6. These protuberances all have a peening action on the aluminum 1 in the same sense as the element 21 of the application, that is, they move the metal as they are driven in."

The patent to Meaker, which appellant states is representative of the second type of staked fasteners hereinbefore described by him, relates to nuts with flanges thereon. In accordance with the disclosure of that patent, a blank body of stock bar dimensions and shape is turned up on its base face with a pair of slightly dished or concave concentric flanges; the outer flange is turned to seat against a slightly dished or concaved face to form a base flange, and a washer with a slightly beveled inner periphery is sleeved over the inner flange, the margin of the latter being spun or pressed out to form a retaining bead which holds the washer against the base flange.

The patent to Olson relates more particularly to fastener units comprising a threaded clamping element and a lock washer secured in a preassembled relation with respect to the clamping surface of the threaded element. The patent was cited by the tribunals of the Patent Office to show, and appellant in his brief concedes that the patent to Olson does show, with respect to the arrangement of the prongs defined in claims 9, 10, and 11, a boss having a metal base and a plurality of triangular metal pyramids formed integral with the base.

Claims 13 and 14 relate to that feature of appellant's fasteners in which he seeks to solve the problem of preventing undesired rotation of the fasteners of the "tapered-protuberance type" by providing, as he states in his brief—

"* * * the boss (2), of which the tapered-protuberance (3) is a part, with auxiliary locking or 'rotation-preventing' means (e.g., the prongs 1, Fig. 1 and/or the 'peen' 21, Fig. 7) integral with the surface from which the 'tapered protuberance' depends. * * *"

The board in its rejection of claims 13 and 14 made the following statement, reference to drawings, other than appellant's, being omitted:

"Claims 13 and 14 differ from claims 9 substantially only in specifying that the boss is circular and is inwardly tapering and in that they do not attempt to specify the properties or specific form of the prongs. These claims are readable word for word on the Anderson patent except that the patent does not disclose the tapering of the protuberance or the tapering at an angle of substantially 15°. The Anderson patent discloses a fastener for attaching a part to an apertured support, said fastener comprising a base having a circular protuberance thereon adapted to be entered into said aperture and of a length corresponding substantially to the thickness dimension of said support, and means integral with said base for preventing rotation of said circular protuberance in said aperture. As pointed out herein the tapering of the protuberance, as in Fig. 3 of the application drawing, is without function so that no invention is involved in merely forming the protuberance of the Anderson structure tapered in view of the Meaker patent or to make such a taper 15°, whether or not this is the angle of the taper shown by Meaker."

Claim 15, drawn to read upon Fig. 7 of appellant's drawings, calls for a base, an inwardly tapering protuberance on the base, and a peen integral with the base adjacent the protuberance. The board held that the structure disclosed in the Meaker patent read upon the elements defined in claim 15, except that neither of the two protuberances disclosed by Meaker is tapering. The board took the position, however, that claim 15 was so broad, that invention would not be involved by such a difference in structure, since the taper was clearly shown in the drawing of the patent by the outer peripheral face of the base flange which is made slightly conical so that the outer edge of the flange is thicker than the root thereof. The board stated that claim 15 was in fact so broad as to read on a base with two protuberances, one of which tapers and the other of which is integral with the base, as disclosed, for example, by the patent to Darling.

The board in affirming the rejection of claims 9, 10, and 11 did not take the position that the device disclosed in either of the patents to Anderson or Olson embodied the exact subject matter defined in those claims, but that no inventive concept was involved in forming and arranging the prongs disclosed in the patent to Anderson, in view of the patent to Olson, which disclosed prongs formed and arranged exactly as specified in claims 9, 10, and 11. The board also held that there was no necessity to rely on any published reference showing the feature in which the prongs disclosed in appellant's application were distorted upon being driven into the metal support since, as suggested by the examiner, such disclosure was in accordance with the principle embodied in self-clinching nails, which principle was "extensively used in such ancient arts as boat-building and horseshoeing."

Appellant concedes that "self-clinching" nails for use with wood, horses hoofs, and other non-metallic or relatively soft substances are old in the art. Appellant also concedes that the patent to Olson shows "a boss having a metal base and a plurality of triangular metal pyramids formed integral with said base * * * said triangular pyramids being of the type having but a single inclined face."

The ultimate question therefore presented for determination by the court, in view of appellant's concessions, is whether the board erred in holding that since claims 9, 10, and 11 were not drawn to the combination of the support and the fastener, the

inclusion in those claims of the feature as to degree of rigidity of the metal of the prongs, such as "sufficiently rigid" and "flexible enough," imparted no positive limitation to the claims.

This court has adhered to the rule that each claim submitted in an application for a patent is required to include by proper limitations the patentable subject matter relied upon by the applicant. Accordingly, the patentability of appellant's dependent claims, the limitations of which may add utility to the subject matter of the allowed claims but which may not involve invention, cannot be here allowed in accordance with the practice cited in the case of Sandy MacGregor Co. et al. v. Vaco Grip Co., 6 Cir., 2 F.2d 655.

The court is of opinion that since claim 9 does not contain a limitation specific to the particular metal which constitutes the structure of the claimed triangular pyramids, the claim does not in that respect meet the requirement of the statute as to definiteness, nor does it come within the decision, upon which appellant relies, in the case of Rosenberg v. John Hassall Inc., 2 Cir., 73 F.2d 58.

However, claim 10 by proper reference incorporates therein the subject matter of claim 9, and contains the additional limitation that the involved base and the triangular pyramids are constituted of a single piece of steel. When claim 10 is thus combined with the limitations of claim 9, the court is of opinion that the combined claims are allowable as revised claim 10. Furthermore, dependent claim 11 is also allowable, in our opinion, when made dependent upon claim 10 as revised.

Appellant states that the board in its rejection of claims 13 and 14 erroneously called the inwardly tapered protuberance illustrated in appellant's drawing a "boss," whereas the word "boss" is used by him to designate a small metal fixture of which the inwardly tapered proturberance referred to by the board is but a part. Moreover, the limitations of claims 13 and 14, in accordance with appellant's specification, embody the concept of a fastener which requires no counterboring or countersinking operation as required in the prior art practice.

Appellant contends that claims 13 and 14 do not read word for word on the patent to Anderson as the board has stated, since that statement disregards the specific limitation in those claims as to the length dimension or "structure" required to carry the said concept into practical effect. Appellant concedes in his brief that fasteners having a single tapered protuberance are old. It is therefore deemed unnecessary to discuss the statement of the board that no invention would be involved in forming the protuberance "of the Anderson structure tapered in view of the Meaker patent," since the court is constrained to disagree with the Patent Office tribunals that claims 13 and 14 are not patentable over the references of record.

The record discloses that dependent claim 16 has been allowed, and that the claim in part includes the "invention as set forth in Claim 15." There is considerable doubt that the structure disclosed by the patent to Meaker, and relied upon by the tribunals below, exerts a peening action, as stated by the board. However, appellant has failed to convince the court that the board was erroneous in holding that claim 15 is so broad as to include the disclosure of the patent to Darling in which the "protuberances all have a peening action on the aluminum 1 in the same sense as the element 21 of the appliction, that is, they move the metal as they are driven in."

For the reasons herein stated, the decision of the Board of Appeals is modified, being reversed as to claims 10, 11, 13, and 14, and affirmed as to claims 9 and 15.

Modified.

HATFIELD, Judge, sat during the argument of this case but, due to illness, did not participate in the decision.